UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

JOE ULE, INDIVIDUALLY
AND AS THE REPRESENTATIVE
FOR THE ESTATE OF JACK ULE,
DECEDENT,

      Plaintiff,

v.　　　　　　　　　　　　　　　　　　　　　　No. 5:19-CV-01459-JKP-ESC

BEXAR COUNTY HOSPITAL
DISTRICT, BEXAR COUNTY,
SHERIFF JAVIER SALAZAR,

      Defendants.

## MEMORANDUM OPINION AND ORDER

The Court has under consideration *Defendants Bexar County and Sheriff Javier Salazar's Motion to Dismiss*. ECF No. 13. Plaintiff[1] filed a response in opposition, *see* ECF No. 17, and Defendant filed a reply, *see* ECF No. 19. The motion is ripe for ruling. For the reasons that follow, the Court grants in part and denies in part the motion.

### BACKGROUND

Accepted as true, Plaintiff's complaint alleges the following factual allegations.[2] Plaintiff Joe Ule is Jack Ule's surviving brother. Jack Ule ("Jack") died on April 18, 2019, while incarcerated as a pretrial detainee in the Bexar County Jail.[3] At the time of his death, Jack was sixty-three years of age. He had previously been diagnosed with schizophrenia, atrial fibrillation,

---

[1] Plaintiff Joe Ule brings this case in dual roles: individually and on behalf of his brother's estate.

[2] When conducting a Fed. R. Civ. P. 12(b)(6) analysis, a court must accept all of the factual allegations in the complaint as true. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).

[3] The parties use Bexar County Jail and Bexar County Adult Detention Center interchangeably. The Court uses the term "Bexar County Jail" or the "Jail."

hypertension, and an elevated "QTC." Jack's death was the result of "hypertrophic and dilated cardiomyopathy," or an enlarged heart leading to heart failure. The events leading to Jack's death, as relevant to Bexar County and Sheriff Salazar, are as follows.

Jack's history of mental illness began in his late twenties. In the year 2000, he was no longer able to work due to his mental illness. In 2015, after caring for his mother until her death, Jack moved to Texas. Unable to work, Jack did not have health insurance and was homeless. In February 2019, Jack sought health care at Bexar County Hospital District d/b/a/ University Health Systems ("UHS"), where he was seen by health care providers at least eight times prior to his arrest on April 4, 2019.

At his first visit to UHS on February 7, 2019, Jack was diagnosed with "Chronic Mental Illness." Over the next two months, UHS police officers and Jack had multiple interactions when UHS officers were summoned for the following reasons: (1) Jack refused to "get up and out of the bed" after he had been discharged for refusing medical services (February 19, 2019); (2) a nurse complained that Jack was "touching/scratching" his genital area while in public view (February 22, 2019); (3) Jack was lingering in the cafeteria (February 22, 2019); (4) Jack was sleeping in the cafeteria while waiting to be seen in the Emergency Department (February 23, 2019): (5) Jack was talking to himself and loitering in the cafeteria (March 13, 2019); (6) Jack received a written criminal trespass warning for "loitering and causing disturbance with staff" (March 19, 2019); (7) after he was discharged Jack would not allow medical staff to remove the IV from his arm and refused to leave because he did not have shoes (March 28, 2019). Each time, Jack was convinced to leave the hospital without incident.

On April 4, 2019, Jack was arrested after he was found watching television in an unoccupied waiting area. It was shortly after midnight, so there was no one around and Jack was

not bothering anyone. Jack told the officer that he had just been discharged from emergency but wanted to rest and watch television. The officer told Jack that watching television and loitering at the hospital were not permitted. The officer then detained Jack and escorted him to the "Behavioral Detainee" side of the UHS facility. After reviewing Jack's history in the UHS database, the officer placed Jack in handcuffs and transported him to jail to be booked for misdemeanor criminal trespassing.

Jack was processed and jailed at the Bexar County Jail by an "unknown" jail administrator. Later that morning, Jack submitted to medical screening and a mental health assessment. During the mental health assessment, Jack admitted to being hospitalized multiple times for mental illness-related issues and also admitted to taking the antipsychotic Olanzapine at one point in his life. UHS provides medical services to Jail inmates including medical staff, on-site services, clinic, pharmacy, and in-patient care. On April 5, 2019, Jack was prescribed a daily dose of Olanzapine. Four days later Jack was observed as manic, irritable, and as having trouble getting to sleep. On April 9, 2019, a UHS employee permitted Jack to sign a refusal of medical services. At that time, Jack had received two nonconsecutive doses of Olanzapine.

On April 17, 2019, at 6:31 a.m., a "Code 1 (Medical Emergency)" was called because Jack was experiencing shortness of breath ("SOB"). Jack was seen by an LVN (licensed vocational nurse) who dismissed Jack's complaint, noting Jack's vital signs were "within normal limits" and that Jack had regularly complained of SOB "over the past 2 months." The LVN put in a "plan for Mental Health" and had Jack returned to the pod. At 8:30 p.m., 9:00 p.m., and 11:30 p.m., Bexar County correctional officers sought medical attention for Jack. The officers relayed that Jack was requesting medical attention and was defecating and urinating on himself. The LVN deemed Jack's request "not a medical emergency" and dismissed the incontinence as

"behavioral." At 12:30 a.m. on April 18, 2019, after an officer again expressed concern for Jack, the LVN decided to assess Jack's status. The LVN determined that Jack was exhibiting "detention" issues, which were the purview of the officers. Jack died at 8:40 that morning.

In December 2019, Plaintiff commenced this civil action asserting claims against Bexar County and Sheriff Salazar under 42 U.S.C. § 1983 and the Texas Constitution and against Bexar County under the Americans with Disabilities and Rehabilitation Acts. *See* Pl.'s Orig. Compl. (ECF No. 4) at 26-49. Plaintiff's complaint also names as defendant Bexar County Hospital District d/b/a/ University Health Systems (UHS), a political subdivision of the State of Texas. *Id.* at 1. Plaintiff's claims arise from medical treatment Jack received from UHS between February 7, 2019 and April 18, 2019; from Jack's arrest by a hospital district police officer on April 4, 2019; his two-week confinement at the Bexar County Jail between April 4, 2019 and April 18, 2019; and his death on April 18, 2019. ECF No. 13 at 1.

Plaintiff specifically asserts Bexar County and Sheriff Salazar: (1) violated the Texas Constitution and Jack's federal Fourteenth Amendment due process and equal protection rights by confining him subject to a cash bail without making an adequate inquiry into his ability to pay, ECF No. 4, pars. 96-105; (2) violated the Texas Constitution, the Texas Code of Criminal Procedure, and Jack's federal Fourteenth Amendment due process right to pretrial liberty by detaining him for an unconstitutionally prolonged period of time, *id.*, pars. 106-114; and (3) subjected Jack to unconstitutional conditions of confinement when they provided constitutionally inadequate medical care, *id.*, pars. 115-138. Plaintiff also asserts Bexar County violated the Americans with Disabilities Act and the Rehabilitation Act when it failed to extend reasonable accommodations to Jack as a disabled prisoner and discriminated against him based on his

disability, *id.*, pars. 144-150. Bexar County and Sheriff Salazar (collectively, "Defendants") move to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6).

## LEGAL STANDARD

Under Fed. R. Civ. P. 12(b)(6), litigants may move to dismiss asserted claims for "failure to state a claim for which relief can be granted." As required by Fed. R. Civ. P. 8(a)(2), every pleading that asserts a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Such requirement provides opposing parties "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

In general, a court addressing a motion under Rule 12(b)(6) "must limit itself to the contents of the pleadings, including attachments thereto." *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014) (citation omitted). Furthermore, when ruling on a motion to dismiss, courts "construe the complaint in the light most favorable to the plaintiff and draw all reasonable inferences in the plaintiff's favor." *Severance v. Patterson*, 566 F.3d 490, 501 (5th Cir. 2009).

"[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (citation omitted). Nevertheless, plaintiffs must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555; *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasizing that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). Facts alleged by the plaintiff must "raise a right to relief above the

speculative level." *Twombly*, 550 U.S. at 555. To survive a Rule 12(b)(6) motion, the complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (citations omitted). As *Twombly* states, to avoid dismissal under Rule 12(b)(6), plaintiffs must allege facts that "nudge" an asserted claim "across the line from conceivable to plausible." 550 U.S. at 570. The focus is not on whether the plaintiff will ultimately prevail, but whether that party should be permitted to present evidence to support adequately asserted claims. *Id.* at 563 n.8.

"Section 1983 provides a federal cause of action for the deprivation, under color of law, of a citizen's rights, privileges, or immunities secured by the Constitution and laws of the United States." *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994) (citation and internal quotation marks omitted). "[T]here can be no § 1983 liability unless the plaintiff has "suffered a constitutional violation . . . at the hands of . . . a state actor." *Doe ex rel. Magee v. Covington Cnty. Sch. Dist.*, 675 F.3d 849, 867 (5th Cir. 2012) (en banc).

Accordingly, for a § 1983 claim to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "the plaintiff must allege that (1) a state actor, i.e., a person or entity acting under color of state law, (2) deprived the plaintiff of a federal constitutional right." *Reitz v. City of Abilene*, No. 1:16-CV-0181-BL, 2017 WL 3046881, at *11 (N.D. Tex. May 25, 2017) (recommendation of Mag. J.) *adopted by* 2017 WL 3034317 (N.D. Tex. July 17, 2017); *accord Calhoun v. Mejia*, No. A-08-CA-135-SS, 2008 WL 11411254, at *3 (W.D. Tex. May 20, 2008) (quoting § 1983).

## DISCUSSION

### I. Constitutional Claims

#### A. Due Process and Equal Protection

#### 1. Manner in which bail was set

Plaintiff asserts Bexar County and Sheriff Salazar violated the Texas Constitution and Jack's federal Fourteenth Amendment due process and equal protection rights by confining him subject to a cash bail without making an adequate inquiry into his ability to pay. ECF No. 4, pars. 96-105.

The setting of bail is within the discretion of the court, judge, or magistrate setting it. *Ex parte Dixon*, PD-0398-15, 2015 Tex. Crim. App. Unpub. LEXIS 659, 2015 WL 5453313, at *2 (Tex. Crim. App. 2015) (not designated for publication). The discretion is limited by Texas state law, which requires that the individual imposing bail: (1) set bail sufficiently high to give reasonable assurance that the undertaking will be complied with; (2) not use bail as an instrument of oppression; (3) consider the nature of the offense and the circumstances under which it was committed; (4) consider the defendant's ability or inability to make bail; and (5) consider the future safety of a victim of the alleged offense. *Id.*; Tex. Code Crim. Proc. Art. 17.15.[4]

Construing the complaint in the light most favorable to Plaintiff and drawing all reasonable inferences in his favor, *Severance*, 566 F.3d at 501, Plaintiff alleges that just after midnight on April 4, 2019, a "Bexar County Hospital Police Department Ambassador" reported

---

[4] In addition to the guidelines in article 17.15, courts have added seven factors to be weighed in determining the amount of bail: (1) the accused's work record; (2) the accused's family and community ties; (3) the accused's length of residency; (4) the accused's prior criminal record; (5) the accused's conformity with previous bond conditions; (6) the existence of other outstanding bonds, if any; and (7) aggravating circumstances alleged to have been involved in the charged offense. The trial court may also consider the fact that the accused is not a United States citizen.

*Ex parte Dupuy*, 498 S.W.3d 220, 230 (Tex. App.—Houston [14th Dist.] 2016, no pet.) (citations omitted).

Jack's presence to Officer Bell, a police officer employed by UHS. Jack was watching television in an unoccupied waiting area of the hospital—there was no one around and he was not bothering anyone—when Officer Bell approached him. ECF No. 4, pars. 50-52 (citing composite Exhibit A, UHS Incident # 19-001197, ECF No. 4-2 at 6-10). Jack told Officer Bell that he had been discharged that day from the "emergency center" but wanted to rest and watch television. *Id.* par. 53. Officer Bell informed Jack that watching television while loitering at the hospital was not permitted, detained Jack for criminal trespassing, and escorted him to "Pod 4, holding cell #4, in the Behavioral Detainee Side of the UHS facility." *Id.* par. 54; *see also* ECF No. 4-2 at 7. There, Officer Bell "had dispatch run him and check the status of any active Criminal Trespass Warnings issued in the past." ECF No. 4-2 at 7. Officer Bell found no convictions on Jack's report, but the report listed six disturbances and loitering reports "linked" to Jack. *Id.* Officer Bell placed Jack in handcuffs and transported him to the Bexar County Jail where he was "processed and jailed by an unknown jail administrator" for "Criminal Trespassing, PC 30.05" a "Class B misdemeanor, punishable under Texas law by a fine not to exceed $2,000, a maximum of six (6) months in jail, or both such fine and confinement." *Id.*; ECF No. 4, pars. 61-62. The individual who set Jack's bail made no inquiry into his ability to pay. ECF No. 4, par. 96.

The motion to dismiss argues that Plaintiff alleges no facts regarding the manner in which Jack's bail was set. ECF No. 13, pars. 9, 11-13. Defendants also argue that publicly available state court records show that Jack appeared before a magistrate within hours of his arrest and was informed of his constitutional rights. ECF No. 13, pars. 17-19. Defendants argue that the court appointed counsel within 48 hours and referred Jack for a mental health assessment. *Id.* Plaintiff's response does not include facts that clarify the manner in which bail was set nor does it present information that contradicts Defendants' arguments. The response reiterates both that

"Jack could not afford to pay bail, and there was no inquiry regarding his ability to pay" and that Jack was "presumed indigent." ECF No. 17 at 13 (citing ECF No. 4, pars. 96, 104). The complaint also states that "Defendants should have" appointed counsel. ECF No. 4 at 33.

Courts presume that public officials have properly discharged their official duties. *United States* v. *Chemical Found., Inc.,* 272 U.S. 1, 14-15 (1926) (citations omitted). This baseline presumption has been applied to the official acts of public officers in the executive branch, *Chemical Found.,* 14-15, prosecutors, *Banks v. Dretke*, 540 U.S. 668, 696 (2004), and judges, *Bracy* v. *Gramley,* 520 U.S. 899, 909 (1997); *Bigby v. Dretke*, 402 F.3d 551, 558 (5th Cir. 2005). Texas appellate courts review habeas petitions based on bail for abuse of discretion, by "measur[ing] the trial court's ruling against the relevant criteria by which the ruling was made." *Ex parte Gomez*, Nos. 01-20-00004-CR, 01-20-00005-CR, 2020 Tex. App. LEXIS 6261, at *8 (Tex. App.—Houston [1st Dist.] 2020) (not designated for publication) (quoting *Montalvo v. State*, 315 S.W.3d 588, 592 (Tex. App.—Houston [1st Dist.] 2010, no pet.) "On appellate review, it is the duty of the reviewing court to measure the ultimate ruling of the habeas court against the relevant bail factors to ensure that the court did not abuse its discretion." *Id.* (quoting *Ex parte Dixon*, 2015 WL 5453313, at *2).

The exhibits attached to Plaintiff's complaint and Defendants' motion to dismiss show that Jack was presented to a magistrate at 3:30 a.m. on April 4, 2019. ECF Nos. 4-2 at 10; 13 at 28. The exhibits further show that Jack's bail was set at $500 and that the magistrate acknowledged that Jack requested counsel. ECF Nos. 4, par. 101; 13 at 28. It is unclear whether counsel was appointed; in Bexar County a defendant must complete an application to determine eligibility for appointed counsel. ECF No. 13 at 28. It is also unclear what factors, if any, the magistrate considered when setting Jack's bail. Whether the Bexar County magistrate considered

the five statutory and seven judicial factors when setting Jack's bail may or may not be borne out through discovery; whether this constitutes a due process violation for which Bexar County can be held liable may or may not be decided in a later dispositive motion or at trial. But at the present motion to dismiss stage, the Court finds Plaintiff has sufficiently alleged a plausible due process claim with respect to the manner in which Jack's bail was set.

"Plaintiffs suing governmental officials in their individual capacities . . . must allege specific conduct giving rise to a constitutional violation. This standard requires more than constitutional assertions: The plaintiff must allege specific facts giving rise to the constitutional claims." *Oliver v. Scott*, 276 F.3d 736, 741 (5th Cir. 2002) (citations omitted). Plaintiff's complaint does not allege Sheriff Salazar was personally involved in setting Jack's bail. Accordingly, this claim does not allege a cause of action against Sheriff Salazar in his individual capacity.

A § 1983 suit for damages against a public official in his or her "official capacity" is, in reality, a suit against the governmental entity that employs the official. *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (state officers sued for damages in their official capacity assume the identity of the government that employs them); *Burge v. Parish of St. Tammany*, 187 F.3d 452, 466 (5th Cir. 1999) (official capacity suits are simply another way of pleading an action against an entity of which an officer is an agent). Because Plaintiff alleges that Sheriff Salazar was employed by Bexar County, claims brought against both Defendants Sheriff Salazar and Bexar County are redundant as to Sheriff Salazar. Therefore, to the extent this claim is construed as a claim against Sheriff Salazar in his official capacity, it is dismissed. Plaintiff's claim that Jack's due process rights were violated when his bail was set, shall proceed against Bexar County only.

### 2. Bexar County Bail-Setting Procedure

Plaintiff asserts that Bexar County's bail-setting procedure is constitutionally inadequate. As noted above, Texas state court bail-setting is guided by Tex. Code Crim. Proc. Art. 17.15 and seven judicially-created factors. Texas courts may also consult bail schedules "when initially setting bail"[5] and use formalized recommendations as a guide "when reviewing the set amount." *Ex parte Taylor*, No. 02-20-00010-CR, 2020 Tex. App. LEXIS 3483, at *12 (Tex. App.—Fort Worth [2d Dist.], Apr. 23, 2020). Additionally, pretrial authorities and procedures vary by county. *See Maranda Lynn Odonnell, et al. v. Harris County, Texas, et al.*, S.D. Tex., No. 4:16-cv-1414, Memorandum and Opinion, ECF No. 125 at 3-4.

Plaintiff alleges Bexar County's bail procedure is similar to the bail procedures in Harris County that were found to violate the equal protection clause of the Fourteenth Amendment. ECF No. 4, pars. 97-98 (citing *ODonnell v. Harris Cty.*, 892 F.3d 147 (5th Cir. 2018)). The allegation that Bexar County bail procedures are similar to Harris County's former bail procedures is insufficient to state a claim. The motion to dismiss correctly points out the factual allegations in the *ODonnell* complaint detailed the bail procedure as it was applied in the lead plaintiff's case; explained, step-by-step, the bail practices employed by Harris County; and supported the allegations with statistics. *See Odonnell*, S.D. Tex., No. 4:16-cv-1414, Class Action Complaint, ECF No. 3 at 3-24. Plaintiff in this case neither alleged facts nor responded to the motion to dismiss with factual content that would allow the court to draw the reasonable inference that Bexar County's bail procedures are unconstitutional. *See* ECF No. 17 at 7-8, 13;

---

[5] "Once the trial court holds a bail hearing, bail should be determined by article 17.15, not by a bail schedule." *Ex parte Dupuy*, 498 S.W.3d 220, 234 (Tex. App. 2016) (citing *Ex parte Garcia*, 100 S.W.3d 243, 246 (Tex. App.—San Antonio 2001, no pet.)).

*Iqbal*, 556 U.S. at 678. Because Plaintiff failed to allege facts to support a constitutional challenge to Bexar County's bail procedures, this claim is dismissed.

### 3. Prolonged Detention

Plaintiff asserts that Defendants violated the Texas Constitution, the Texas Code of Criminal Procedure, and Jack's federal Fourteenth Amendment due process right to pretrial liberty by detaining him for an unconstitutionally prolonged period of time. ECF No. 4, pars. 106-114. Plaintiff alleges that Jack's status as a pretrial detainee, that he was suffering from a known mental illness and unable to pay $500 bail, and that he was charged with a minor offense is evidence that his "pretrial incarceration" was both "oppressive" and in violation of Texas Code of Criminal Procedure article 17.032. *Id.*, pars. 106-107, 110.

Defendants argue that while article 17.032 permits a magistrate to release a defendant on a personal bond with the condition that the defendant submit to inpatient or outpatient mental health treatment, article 17.032 is subject to several requirements, including that the defendant must be examined by a qualified mental health expert. ECF No. 13 at 9. Defendant further argues that only after these prerequisites have been met does the statute require the magistrate to render a decision regarding whether "release on personal bond would reasonably ensure the defendant's appearance in court as required and the safety of the community and the victim of the alleged offense." *Id.* (citing Tex. Code Crim. Proc. art. 17.032(b)(5)).

The briefing shows Jack was arrested shortly after midnight on April 4, 2019. ECF Nos. 4-2 at 10; 13 at 28, 30. Jack was presented to a magistrate at 3:30 a.m. who set bail at $500 and noted that Jack asked the court to appoint counsel. ECF No. 13 at 28. That same day, the magistrate signed an order for a mental health assessment in accordance with article 17.032. *Id.* at 30. Plaintiff's complaint acknowledges that a mental health assessment of Jack began on the

day of his arrest and continued for several days thereafter. ECF No. 4, pars. 64-65, 71. Although the briefing includes no facts to show what happened next, the parties do not dispute that Jack's detention at the Bexar County Jail continued until the time of his death. Defendants argue that the Sheriff is legally obligated to execute all lawful process but does not explain what role or responsibility the Jail has with respect to the process set forth in article 17.032. ECF No. 13 at 10.

Whether any failure to promptly release Jack on a personal bond constitutes a due process violation for which Bexar County can be held liable may or may not be decided in a later dispositive motion or at trial. The focus is not on whether Plaintiff will ultimately prevail, but whether he should be permitted to present evidence to support any adequately asserted claims. *See Twombly*, 550 U.S. at 563 n.8. Consequently, at the present motion to dismiss stage, the Court finds Plaintiff has sufficiently alleged a plausible due process claim with respect to whether any right to pretrial liberty was impinged by a failure to release Jack on a personal bond conditioned on Jack's participation in mental health treatment. For the reasons stated above, this claim shall proceed against Bexar County only.

### B. Inadequate Medical Care

Plaintiff alleges in two separate counts that Bexar County and Sheriff Salazar violated Jack's right to adequate medical care under the Fourteenth Amendment. Count II asserts the claim pursuant to a "conditions of confinement" legal theory. ECF No. 4, pars. 115-138. Count III asserts the claim pursuant to a "episodic act or omission" legal theory. *Id.*, pars. 139-142.

#### 1. Conditions of Confinement

A conditions of confinement claim is a constitutional attack on "general conditions, practices, rules, or restrictions of pretrial confinement." *Hare v. City of Corinth*, 74 F.3d 633,

13

644 (5th Cir. 1996) (en banc); *see also Estate of Henson v. Wichita Cty., Tex.*, 795 F.3d 456, 462 (5th Cir. 2015). A conditions of confinement claim capable of surviving a motion to dismiss alleges: (1) "a rule or restriction or . . . the existence of an identifiable intended condition or practice . . . [or] that the jail official's acts or omissions were sufficiently extended or pervasive"; (2) which was not reasonably related to a legitimate governmental objective; and (3) which caused the violation of [the inmate's] constitutional rights. *Duvall v. Dall. Cty. Tex.*, 631 F.3d 203, 207 (5th Cir. 2011) (quoting *Hare*, 74 F.3d at 645).

A condition may be expressed by an explicit policy or an unstated or *de facto* policy. Explicit policies include revocations of or restrictions on privileges, disciplinary segregation, overcrowding, length of pre-trial detention, or refusing access to drugs for rehabilitation. *See Scott v. Moore*, 114 F.3d 51, 53 n.2 (5th Cir. 1997) (en banc) (listing cases deemed to be conditions of confinement cases). An unstated or *de facto* policy, may be evidenced by a pattern of acts or omissions "sufficiently extended or pervasive misconduct by [jail] officials, to prove an intended condition or practice." *Hare*, 74 F.3d at 645. A *de facto* policy may be demonstrated through evidence such as commissioned reports, consistent employee testimony, and "other documentary evidence indicating inmates received 'grossly inadequate' treatment." *Montano*, 842 F.3d at 875. A constitutional violation is alleged where the facts show that "the condition of confinement is not reasonably related to a legitimate, non-punitive governmental objective." *Scott*, 114 F.3d at 53.

According to Plaintiff, Defendants Bexar County and Sheriff Salazar "have a documented pattern and practice of noncompliance [with standards set by the Commission on Jail Standards], thereby creating *de facto* policies of improperly protecting and caring for inmates with mental health issues putting them at substantial risk of serious harm." *Id.* par. 131. Plaintiff alleges this

14

noncompliance is evidenced by the deaths of nine inmates in eight months at the Bexar County Jail and the February 25, 2019 Inspection Report by the Texas Commission on Jail Standards, identifying nine areas of noncompliance within Bexar County Jail. *Id.*, pars. 134, 136; ECF No. 4-3 at 2-10. The areas of noncompliance included, *inter alia*, the employment of civilians to perform duties of health personnel, the failure to reassess inmate classification every thirty to ninety days, and that jail staff exceeded the required face-to-face observation of each inmate every sixty minutes. *Id.*, pars. 137-138; ECF No. 4-3 at 5.

Reports about the fate of inmates at Bexar County Jail are indeed troubling. However, the facts of *this case*, as alleged, do not indicate that any failure to provide Jack medical care was due to the act or omission of a Bexar County correctional officer or due to general conditions, practices, rules, or restrictions of the Bexar County Jail. Additionally, the complaint does not allege facts that show a policy, pattern, or practice of the Jail caused the violation of Jack's constitutional rights.

**2. Episodic Act or Omission**

A plausibly alleged episodic act or omission claim alleges facts that show: "(1) that the municipal employee violated [the pretrial detainee's] clearly established constitutional rights with subjective deliberate indifference; and (2) that this violation resulted from a municipal policy or custom adopted and maintained with objective deliberate indifference." *Cadena v. El Paso Cty.*, 946 F.3d 717, 727 (5th Cir. 2020). A claim for deliberate indifference to a serious medical need must plausibly allege that a specific defendant was deliberately indifferent to the plaintiff's serious medical needs. *See Helling v. McKinney*, 509 U.S. 25, 32 (1993); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A serious medical need is "one for which treatment has been

recommended or for which the need is so apparent that even laymen would recognize that care is required." *Gobert v. Caldwell*, 463 F.3d 339, 345 n.12 (5th Cir. 2006).

An allegation of deliberate indifference must show (1) the plaintiff's "exposure to a substantial risk of serious harm" and (2) the official's "deliberate indifference to that risk," such as the intentional denial, delay, or interference with a plaintiff's medical care, or conduct that evinces a wanton disregard. *Id.*, 463 F.3d at 345-46; *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001); *see also Estelle*, 429 U.S. at 104-05. Thus, an inadvertent failure to provide adequate medical care, negligence, a mere delay in medical care (without more), or a difference of opinion over proper medical treatment, are all insufficient to constitute deliberate indifference. *See Estelle*, 429 U.S. at 105-07. Deliberate indifference requires a showing that officials refused to treat the detainee, ignored his complaints, intentionally treated him incorrectly, or engaged in similar conduct that would clearly evince a wanton disregard for any serious medical needs. *Domino*, 239 F.3d at 756.

The complaint alleges that "at the time of Jack's arrest, Officer Bell also knew that Jack had been linked to previous criminal warnings at UHS without any violence or property being damaged and that previous incidence reports noted behavior indicative of mental health issues." ECF No. 4, par. 58. Plaintiff alleges the information in the prior incident reports showed that Jack belonged in "Emergency Mental Health Detention" but Officer Bell took him to be processed into the "Adult Detention Center," rather than Emergency Mental Health Detention. ECF No. 4, pars. 3, 62.

Defendants argue that "Emergency Mental Health Detention is reserved for individuals whose mental illness, *inter alia*, poses 'a substantial risk of serious harm to the person or to others unless the person is immediately restrained.'" ECF No. 13, par. 22. Defendants argue that

the complaint does not allege Jack was exhibiting behavior that posed a substantial risk of serious harm to himself or others. Instead, at the time of his arrest, Jack was "watching television in an unoccupied waiting area; not bothering anyone; committing no crime; and exhibiting no behavior that could have warranted his arrest." *Id.*, par. 23 (internal quotations omitted). Defendants further argue that "even if Officer Bell had identified a need for Jack to be in Emergency Mental Health Detention, absent a court order, Jack could have only been detained there for forty-eight hours" before, presumably, being transferred to the Jail. *Id.*

Taken in the light most favorable to Plaintiff, the allegations in the complaint do not allege facts that show Officer Bell was deliberately indifferent to a serious medical need when he escorted Jack to the "behavior health side," from where Jack was transported to the magistrate. *See* ECF Nos. 4, pars. 54-55; 4-2 at 10. An allegation of inadvertence or negligence does not violate a pretrial detainee's rights, a Plaintiff must allege the official knew of and disregarded an "excessive risk to inmate health or safety." *Estelle*, 429 U.S. at 105-106, *Farmer* v. *Brennan*, 511 U. S. 825, 837 (1994). The allegation that Bell reviewed "previous incidence reports," which noted "behavior indicative of mental health issues," and then took Jack to be processed into the Jail rather than Emergency Mental Health Detention does not support an inference of subjective deliberate indifference.

Plaintiff further alleges Defendants Bexar County and Sheriff Salazar's "*per se* violations of Texas statutes as well as multiple examples of noncompliance with department and agency guidelines" are evidence of "subjective knowledge of a substantial risk of serious harm and response with deliberate indifference." *Id.*, par. 141. Specifically, Plaintiff alleges Sheriff Salazar violated multiple "General Duties" required under § 511.009 of the Texas Government Code, including failing to "report to the Texas Correctional Office on Offenders with Medical or

Mental Impairments on a jail's compliance with Article 16.22, Code of Criminal Procedure," and failing to ensure the jail adopted "reasonable rules and procedures to ensure the safety of prisoners." *Id.*, par. 142.

Plaintiff's complaint states that medical care services at the Jail are provided by UHS. While Plaintiff's complaint purports to allege that Sheriff Salazar, as jail administrator, is the official ultimately responsible for the safety of the detainees held in the Jail, taken in the light most favorable to Plaintiff, the allegations are too tenuous to support a conditions of confinement claim for failure to provide medical care against Sheriff Salazar. Particularly in light of the corrections officers' conduct in this case, who in Jack's final hours, repeatedly communicated concerns about Jack's wellbeing and tried to get the LVN to help Jack.

Consequently, the complaint does not show that Sheriff Salazar or any corrections officer in his employ met Jack's need for medical care with subjective deliberate indifference. Because Plaintiff has not sufficiently alleged a claim pursuant to a "conditions of confinement" or an "episodic act or omission" legal theory, Plaintiff's inadequate medical care claims are dismissed.

## II. Americans with Disabilities Act and Rehabilitation Act Claims

Plaintiff asserts Bexar County violated the Americans with Disabilities Act ("ADA") and the Rehabilitation Act when it failed to extend reasonable accommodations to Jack as a disabled prisoner and discriminated against him based on his disability. ECF No. 4, pars. 144-150.

> A plaintiff must first establish a prima facie case of discrimination before relief under the ADA can be considered. To establish a prima facie case of discrimination under the ADA, a plaintiff must demonstrate: (1) that he is a qualified individual within the meaning of the ADA; (2) that he is being excluded from participation in, or being denied benefits of, services, programs, or activities for which the public entity is responsible, or is otherwise being discriminated against by the public entity; and (3) that such exclusion, denial of benefits, or discrimination is by reason of his disability.

> The prima facie case of discrimination under the Rehabilitation Act is operationally identical to the test under the ADA, requiring a plaintiff to allege: (1) the existence of a program or activity within the state which receives federal financial assistance; (2) the plaintiff is an intended beneficiary of the federal assistance; and (3) *the plaintiff is a qualified handicapped person, who solely by the reason of her handicap has been excluded from participation in, been denied benefits from, or otherwise has been subject to discrimination under such program or activity*.

*Melton v. Dall. Area Rapid Transit*, 391 F.3d 669, 671-72, 676 n.8 (5th Cir. 2004) (emphasis in original) (citations omitted). For the purpose of this motion to dismiss, the parties appear to agree that "prison medical care is a program or service for which a public entity is responsible" and therefore, the complaint must demonstrate that a Bexar County official or employee denied Jack medical care. ECF No. 4, pars. 146, 148 (quoting *Borum v. Swisher Cty.*, No. 2:14-CV-127-J, 2014 WL 4814541, at *9 (N.D. Tex. Sept. 29, 2014)); ECF No. 13, par. 38.

Plaintiff does not allege that any Bexar County official or employee took any action to prevent Jack from receiving prison medical care. Plaintiff alleges officers "worried for Jack's safety[,]" "were concerned about Jack's health and behavior[,]" and "repeatedly notified the nurse that there were concerns about Jack." ECF No. 4, pars. 79, 145. Because Plaintiff has failed to allege facts showing that any Bexar County employee engaged in any act to deny prison medical care to Jack, Plaintiff has failed to state a viable ADA or Rehabilitation Act claim against Bexar County. Accordingly, this claim is dismissed.

## CONCLUSION

For the reasons set forth above, *Defendants Bexar County and Sheriff Javier Salazar's Motion to Dismiss* (ECF No. 13) is GRANTED in part and DENIED in part. Plaintiff's claims (1) alleging he was denied due process with respect to the manner in which bail was set and (2) alleging he was denied due process with respect to the procedure for personal bond under article 17.032 survive the motion to dismiss and shall proceed. All other claims against Defendants

Bexar County and Sheriff Salazar are DISMISSED. Plaintiff's surviving claims do not allege facts that implicate Sheriff Salazar in his individual capacity and Plaintiff's claims against Sheriff Salazar in his official capacity are dismissed as redundant of the claims against Defendant Bexar County. Accordingly, Defendant Sheriff Javier Salazar is DISMISSED from the action. In accordance with Fed. R. Civ. P. 54(b), a Partial Final Judgment is entered contemporaneously herewith.

It is so ORDERED.

SIGNED this 22nd day of September 2020.

_____
JASON PULLIAM
UNITED STATES DISTRICT JUDGE